Edward M. O’Gorman, J.
The defendant was convicted of failing to dim her headlights as required by subdivision 3 of section 15 of the Vehicle and Traffic Law of the State of New York, after a trial in a Court of Special Sessions in the Town of Newburgh (C. Peter Miller, J. P.), on June 3,1959, and was sentenced to pay a fine. Erom the conviction and fine imposed, she now appeals.
The arresting officer testified that while patrolling his post on the New York State Thruway in a northbound direction, he observed the defendant traveling in a southbound direction; that when approximately 1,000 feet distant from the defendant, he repeatedly flicked his lights from high to low beam while approaching, and that the defendant did not lower her beam from high to low. He testified that the high beam lights of the defendant 11 interfered with his operation of the car he was driving, requiring him to reduce his speed. ’ ’ He further testified that a 50-foot mall and a 12-foot traffic lane separated his northbound vehicle from the defendant’s southbound vehicle.
The defendant offered no evidence. She claims that subdivision 3 of section 15 of the Vehicle and Traffic Law is uncons titutional.
A criminal statute must be sufficiently definite, clear and positive to give unequivocal warning to citizens of the rule which is to be obeyed. (People v. Firth, 3 N Y 2d 472, 474 [1957].)
The portion of subdivision 3 of section 15 of the Vehicle and Traffic Law here involved is as follows: ‘ ‘ Provided that, whenever a vehicle approaching from ahead is within five hundred feet . * * * the headlamps, if of the multiple beam type, shall be operated so that dazzling light does not interfere with the driver of the approaching vehicle * * * and, whenever the highway is so lighted or traffic thereon is such that illumination of the highway for more than two hundred feet ahead of the vehicle by lights on such vehicle is unnecessary or impracticable, the head lamps, if of the multiple beam type, shall be operated with the lowermost distribution of light in use.”
This subdivision deals with three situations in which the motorist is required to dim his headlights. It is our opinion that the language of the statute governing each of these situations is so indefinite, unclear and ambiguous as not to give 1 ‘ unequivocal warning ’ ’ to citizens of the rule which is to be obeyed. Application of the statute in each of the alternative situations is therefore unconstitutional.
*839 The situations will be taken up in order. With respect to the approach of one vehicle to another from ahead, the statute directs that the head lamps shall be operated ‘ ‘ so that dazzling light does not interfere with the driver of the approaching vehicle”. In our view, the term “dazzling” is too vague a descriptive adjective to definitely describe either the quality or the quantity of the light which is here forbidden.
Webster defines the term “ dazzle ”, “1. To overpower with light; to hinder distinct vision by intense light. 2. To surprise, confuse or overpower with brilliant qualities, display, etc. 3. To be overpowered by glare; to arouse profound admiration by brilliant display.” (Webster’s New 20th Century Dictionary, Unabridged [2d ed., 1957].)
As thus defined, the adjective fails to fix a definite, clear and positive point at which a light, otherwise proper, becomes ‘ ‘ dazzling ’ ’ and illegal.
This portion of the statute, however, contains not only the ambiguous term “ dazzling ”, but it also requires that the light “not interfere with” the driver of the approaching vehicle. A similar use of the word “ interfere ” has already been struck down as being indefinite, in People v. Grogan (260 N. Y. 138, 147 [1932]), in the following language: “What is unnecessary interference ? What standard have we to measure it by, known to the common law, or to any other realm of jurisprudence? We must not leave it for the judge or jury to guess at; we are obliged to tell them something as a guide and not leave a man’s conduct to be judged solely by the whim of the hour.”
The present statute goes beyond “ unnecessary interference ”. It would make any interference, however slight, an offense.
In the second situation, the motorist is guilty of an offense if he fails to dim his headlights whenever the highway is “so lighted ” that its illumination for more than 200 feet ahead is “ unnecessary or impracticable ”. The inadequacy of the term ‘ ‘ unnecessary ’ ’ to define a standard of conduct has been pointed out in People v. Grogan (supra). The use of the term “ impracticable ” as an alternative would seem to be equally inadequate. Webster defines the term “ impracticable ” as, “ 1. Not capable of being carried out in practice, as, an impracticable plan. 2. Not capable of being used, as, an impracticable road. 3. Not capable of being managed or dealt with; intracticable, as, an impracticable person.” (Webster’s New 20th Century Dictionary.) It has probably been used in this statute in a sense of unnecessary, but, in any event, in the language of the court in People v. Firth (3 N Y 2d 472, 474, supra) “ the statutory verbiage is practically meaningless ”,
*840 The final situation within the purview of subdivision 3 occurs whenever traffic on the highway is such that its illumination for more than 200 feet ahead is “ unnecessary or impracticable The foregoing reasoning also applies to the portion dealing with traffic, since the words ‘ ‘ unnecessary ’ ’ and “ impracticable ” apply to both situations.
The law-abiding motorist on the highway at night has many rules to carry in mind while operating his motor vehicle. To require him, in addition, to gauge the quality of the lighting and the quantity of the traffic, and to determine whether constantly changing lighting or the erratic flow of traffic renders his high headlight bean “ unnecessary ” or “ impracticable ”, would result in a heavy burden indeed. He will look in vain to this statute for any unequivocal warning of the rules which he is expected to obey. To require him to make such a determination accurately, without such warning, or suffer a penalty, is not due process of law.
The conviction is reversed on the law and the fine is remitted.
Submit order.